UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
BRUCE WRIGHT,                              :
                                           :
                          Petitioner,      :         02 Civ. 8669 (KMK) (MDF)
                                           :
              -against-                    :         REPORT AND RECOMMENDATION
                                           :
SUPERINTENDENT POOLE,                      :
Five Points Correctional Facility,         :
                                           :
                          Respondent.      :
------------------------------------------------------x

TO:  THE HONORABLE KENNETH M. KARAS, U.S.D.J.

        Petitioner, *pro se*, seeks a writ of habeas corpus to challenge his conviction for burglary in

the second degree (N.Y. Penal Law §140.25(2)).  The Dutchess County Court, Judge Marlow,

sentenced him as a persistent violent felony offender to a term of imprisonment of twenty (20)

years to life.  The Supreme Court Appellate Division, Second Department, affirmed the

conviction in a brief decision, the substance of which reads as follows:

> Viewing the evidence in the light most favorable to
> the prosecution (*see, People v. Contes*, 60 N.Y.2d 620, 467
> N.Y.S.2d 349, 454 N.E.2d 932), we find that it was legally
> sufficient to establish the defendant's guilt beyond a
> reasonable doubt. Moreover, upon the exercise of our
> factual review power, we are satisfied that the verdict of
> guilt was not against the weight of the evidence (*see,* CPL
> 470.15[5]).
>
> The defendant's remaining contentions, including
> those raised in his supplemental *pro se* brief, are either
> unpreserved for appellate review or without merit.

*People v. Wright*, 724 N.Y.S.2d 351 (2d Dep't), *lv. denied*, 96 N.Y.2d 943 (N.Y. 2001).

        The case has a relatively long procedural history, which has generated considerable

correspondence from my staff to Petitioner.  The history stems from Petitioner's having

persuaded me to allow him to pursue a motion to vacate the conviction pursuant to N.Y. Crim.

Proc. Law § 440.10, ostensibly to exhaust unexhausted claims.  In the correspondence, at my

direction, my then law clerk noted that the purpose was not to permit him to present new or

different claims to the state courts and then return here to amend the petition.  The

correspondence also advised Petitioner that he did not require permission from this Court to pursue post-conviction motions in the state courts and that my office was not going to furnish legal advice to him.

After Petitioner advised me that the Appellate Division had denied leave to appeal the state trial court's denial of his § 440.10 motion, I issued a memorandum order (doc. #11), the primary purpose of which was to require both sides to indicate exactly what claims were before the Court in light of the original petition, Petitioner's supplement to the original petition, which does not appear on the docket sheet and which has not been the subject of an order that requires an answer from the State, and the § 440.10 motion, and further, to identify which claims had been exhausted and which claims had been procedurally defaulted. Consistent with that order, the State submitted another volume of exhibits, 39-47, and a supplemental memorandum of law (doc. #15) which advised that as the record contains no amended petition, the claims are as they were before.

In response to the State's supplemental memorandum of law, Petitioner submitted an affidavit in reply (doc. #16) in which he essentially reiterates his confusion and prior requests for guidance as to how to proceed. While he acknowledges that the order correctly identifies his concerns about the procedural defaults the state trial court relied upon to dispose of his claims 5, 6, 9, and 10 in his § 440.10 motion, he advises that the purpose of prior letters was to ask this Court to stay proceedings so that he could pursue a writ of error *coram nobis* in the Appellate Division. The only purpose for that application is to exhaust a claim of ineffective assistance of appellate counsel, *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001), and none of the ten claims raised in the § 440.10 motion is for ineffective assistance of appellate counsel.[1] Petitioner also

---

[1]As far back as a letter dated July 29, 2003, Petitioner asked to withdraw his original petition without prejudice to refiling so that he could litigate a jurisdictional claim in state court and pursue a *coram nobis* application to exhaust an unspecified claim of ineffective assistance of appellate counsel. If Petitioner seriously wanted a stay, the obvious procedure, having been advised that this Court's permission is not a precursor to filing proceedings in the state court, he should have filed the *coram nobis* application and whatever other post-conviction applications in the state courts and then moved for a stay of these proceedings with his state court submissions attached as exhibits in support of his motion. That

requests advice concerning whether claims 5, 6, 9, and 10 in his § 440.10 motion have been exhausted and whether the Court by its memorandum order has directed Petitioner to file an amended petition. Having cited the relevant case of *Baldwin v. Reese*, 541 U.S. 27 (2004), in the reply affidavit, Petitioner should be able to determine for himself if the claims in his § 440.10 motion have been exhausted. In response to his request for advice, the Court repeats its prior response that judges do not advise litigants how to proceed.

In the aforementioned correspondence, my then law clerk alerted Petitioner to *Rhines v. Weber*, 544 U.S. 269 (2005), in which the Supreme Court, in light of the interplay between the exhaustion requirement for federal habeas review and the governing one-year statute of limitations, 28 U.S.C. § 2244(d)(1), allowed district courts the option to stay "mixed" petitions, those containing exhausted and unexhausted grounds, while the Petitioner exhausted his state remedies. Petitioner did not follow that path in this case. Instead of filing a timely petition which set forth all of his claims, he filed a petition with some claims and then asked for a stay while he exhausted other claims. Language in *Rhines* strongly suggests that district courts should not permit this procedure because it frustrates the goal of encouraging finality by allowing a petitioner to delay resolution of the federal case, and it decreases a petitioner's incentive to exhaust his state court remedies prior to filing the federal petition. 544 U.S. at 277.

Through his profession of a need for guidance on how to proceed, Petitioner has delayed this proceeding for years and has almost certainly accomplished an end run around the one-year statute of limitations. By letter dated January 22, 2007, he seeks to continue the delay and the end run by requesting yet another stay so that a state court may address prospective meritorious issues which will put Point Four of his original petition in the proper legal context and perspective. Contrary to *Rhines*, which requires a showing of good cause for failure to exhaust and that the unexhausted claims are potentially meritorious to obtain a stay of the federal habeas proceeding,

---

procedure permits this Court to determine as a preliminary matter whether Petitioner has alleged a claim which, if proved, establishes a violation of his federal constitutional rights, as opposed to merely a claim or claims premised on state law.

*see id.*, he makes this request without specifying or identifying what those issues are or why they are meritorious.

"A mixed petition should not be stayed indefinitely," *Rhines*, 544 U.S. at 277, and this matter has been pending long enough. I respectfully recommend that your Honor deem the petition amended to include the ten claims raised in Petitioner's § 440.10 motion. The State had ample opportunity to respond to that motion in the state court. *See* Resp't Ex. 40. Any of the ten claims subjected to procedural default by the state trial court, *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), should be subject to the consequences of procedural default in this Court as if the State had raised the procedural default, *see Gray v. Netherland*, 518 U.S. 152, 165-66 (1996), which obviates the need for an additional submission by the State. If Petitioner has a relevant response to the state court's invocation of procedural default to resolve a claim, he may submit it as part of his objections to the report and recommendation.

Having resolved the procedural loose ends, the Court moves to the merits of Petitioner's claims. At trial, Petitioner, who had prior convictions, did not testify. Through direct and circumstantial evidence, the State established, without dispute, that a second floor apartment over a garage had been broken into and ransacked while the occupant was not present. Two eyewitnesses, Romuald and Maria Suchy, a husband and wife who lived across the street, observed the perpetrator as he left the premises with the victim's property. The Suchys provided general descriptions of the burglar, but Mr. Suchy had been unable to identify Petitioner from a photographic array on two separate occasions. The Suchys, who had heard an alarm,[2] had not been alerted to the criminal aspect of what they had observed until the police arrived. Upon arrival, the police discovered that the burglar had left a trail of the victim's property. An officer with a tracking dog followed the trail of the property to a parking lot just south of the burglarized premises and then diagonally across the lot to a path on which they found more stereo equipment

---

[2]The occupant of the apartment had not activated the alarm for her unit. The witnesses heard a separate alarm, which covered the front entrance to the building.

and a pillowcase that contained the victim's personal belongings. The path led to another parking lot where the officer testified he observed Petitioner whom he knew.

The Suchys had seen the burglar, in the course of exiting the premises, drop a VCR on the sidewalk in front of the building next door. The police officers recovered a latent fingerprint from the VCR which matched Petitioner's, and the State presented considerable evidence to establish the integrity of the VCR from which the print was recovered. The defense sought to cast doubt on the integrity of the recovered fingerprint, since the police officers had failed to photograph the print before lifting it from the VCR, and since there had been problems with fingerprint forgery among the state police, who had been involved in the handling of the case subsequent to the recovery of the fingerprint. However, the fingerprint had been lifted by police officers from the City of Poughkeepsie Police Department, which did not have a policy of requiring a photograph to be taken prior to lifting the print. The result, in part, was a trial of battling experts. At the close of trial, the jury rendered a guilty verdict on the sole count of burglary in the second degree.

**DISCUSSION**

**I.      Original Petition for Writ of Habeas Corpus**

Petitioner's original petition for writ of habeas corpus contained five grounds for relief. For the reasons that follow, none provides a basis upon which relief may be granted in a habeas proceeding.

*Ground 1*

Petitioner challenges the way that the Appellate Division handled his direct appeal. He argues that the Appellate Division improperly denied his request for reargument after his conviction was upheld on appeal, and he claims that the Appellate Division erred when it allowed the District Attorney's office to make an untimely filing of a supplemental brief. It is unclear how these errors resulted in the "fundamental miscarriage of justice" claimed by Petitioner.

First, with respect to the District Attorney's supplemental brief, while it may have been

untimely filed, it was submitted in response to Petitioner's own *pro se* supplemental brief, in which he was able to advance all of his arguments challenging his conviction. Petitioner mistakenly believes that legal briefs are part of the "record" considered by the court on appeal and that therefore, the Appellate Division decided his appeal on an incomplete record when it not only allowed for the District Attorney to file its supplemental brief several months late, but prevented him from filing a reply brief in response. This argument, which concerns state court procedural decisions, raises no issue of federal law and cannot provide a basis for habeas relief. *See* 28 U.S.C. § 2254(a) (A court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Second, with respect to Petitioner's motion to reargue, that motion was primarily based on the Appellate Division's failure to preclude the District Attorney's untimely supplemental brief. Therefore, the Appellate Division's denial of the motion does not implicate a federal constitutional right and similarly cannot provide a basis for habeas relief.

### Grounds 2, 3, 4

In Ground 2 of Petitioner's habeas petition, he argues that the trial court gave an erroneous jury instruction concerning circumstantial evidence, which violated his due process rights. This argument was presented on direct appeal to the Appellate Division as Point 18 of Petitioner's *pro se* supplemental brief. *See* Resp't Ex. 29. In Ground 3 of Petitioner's habeas petition, he argues that the trial court erred when it allowed two eyewitnesses to describe the person they saw committing the burglary. This argument was presented on direct appeal to the Appellate Division in Points 3, 10, 15, and 17 of Petitioner's *pro se* supplemental brief. *See id.* In Ground 4 of Petitioner's habeas petition, he argues that his indictment on the burglary charge was in violation of his constitutional rights since, among other things, when he was arrested on

the night of the burglary on other charges, and arraigned two days later, he was never told about the burglary charge.  This argument was presented on direct appeal to the Appellate Division in Point 16 of Petitioner's *pro se* supplemental brief.  *See id*.

In Petitioner's counsel's application for leave to appeal to the New York Court of Appeals, however, she presented only the three points that had been submitted in counsel's brief to the Appellate Division and mentioned none of the points raised in Petitioner's *pro se* supplemental brief.  *See* Resp't Ex. 35.  Having not been included in the leave application to the New York Court of Appeals, such claims have been procedurally defaulted, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (even if the original Appellate Division briefs are submitted along with the leave application, an issue is procedurally defaulted if it is not presented to the New York Court of Appeals in the application itself),[3] and Petitioner has failed to demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### Ground 5

In Ground 5 of Petitioner's habeas petition, he reasserts the three arguments made in his application for leave to appeal to the New York Court of Appeals.[4]

---

[3]Hence, in this case, where the leave application submitted by Petitioner's counsel expressly stated, "The case presents the following issues that warrant consideration by the Court of Appeals . . ." prior to enumerating, and then expounding upon, the three issues raised in counsel's brief to the Appellate Division, *see* Resp't Ex. 35, the issues raised in Petitioner's *pro se* supplemental brief were not presented to the New York Court of Appeals, even though the *pro se* supplemental brief was submitted along with the leave application.  *See, e.g.*, *Gillespie v. Miller*, No. 04 Civ. 0295, 2004 WL 1689735, at *11 (S.D.N.Y. July 29, 2004) ("A mere reference to Gillespie's supplemental *pro se* First Department brief is not sufficient to have exhausted the claims in the New York Court of Appeals, especially in light of the lengthy discussion of the two separate claims by his appellate counsel.").

[4]With respect to any claim that was adjudicated on the merits in state court proceedings, such claim shall not form the basis for habeas relief unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2).

### Weight and sufficiency of the evidence

The first argument made in Petitioner's leave application was that the verdict was against the weight of the credible evidence and was legally insufficient to convict Petitioner of the crime with which he was charged.

A challenge to the weight of the evidence raises no constitutional claim and cannot form the basis for relief in a federal habeas proceeding. *See Woullard v. Phillips*, No. 04 Civ. 2225, 2007 WL 1958971, at *7 (S.D.N.Y. July 6, 2007) ("A challenge to a verdict based on the weight of the evidence differs from one based on the sufficiency of the evidence: the weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.") (internal quotation marks and citations omitted), *adopted by* 2007 WL 2542433 (S.D.N.Y. Sep. 6, 2007) .

Petitioner also challenges the sufficiency of the evidence upon which his conviction was based. "In a habeas proceeding, there is a very heavy burden . . . upon a defendant challenging the sufficiency of the evidence underlying his conviction. To succeed, [the petitioner] must demonstrate that viewing the evidence in the light most favorable to the government, . . . no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Woullard*, 2007 WL 1958971, at *5 (internal quotation marks omitted) (quoting *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir. 1995)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original) (citation omitted). In addition, "[g]uilt beyond a reasonable doubt may be established entirely by circumstantial evidence, and this evidence must not be reviewed piecemeal, but rather as a whole." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted). "Finally, assessments of the weight of

the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments on both of these issues." *Id.* (citations omitted); *see also Goston v. Rivera*, 462 F. Supp. 2d 383, 392 (W.D.N.Y. 2006) ("The resolution of issues of credibility, which is central to the adjudication of petitioner's challenge to the legal sufficiency of the evidence, is exclusively the province of the jury, whose determination may not be overturned lightly.") (citing cases).

In this case, the evidence was legally sufficient to support the jury's finding of guilt beyond a reasonable doubt. First, there was eyewitness testimony regarding the perpetrator and what he looked like. The perpetrator was seen entering the dwelling, carrying the victim's property from the dwelling, and dropping a VCR on the sidewalk outside of the building next door. Second, one of the police officers, within approximately a half hour of arriving at the scene of the crime, saw Petitioner walking across a parking lot near the woods where some of the stolen property was recovered. Finally, there was the latent fingerprint, said to have been lifted from the stolen VCR, which, all experts agreed, matched Petitioner's fingerprint. While there was disagreement among the experts as to the source of the latent fingerprint, given the fact that the police officers had failed to photograph the fingerprint before lifting it off of the VCR, the jury was entitled to credit the testimony of the prosecution's witnesses, who testified that the latent print was, in fact, taken from the VCR. In addition, evidence was presented to the effect that the authenticity of a fingerprint could be established by the presence of more than one police officer when the fingerprint was lifted, as occurred in this case. Fingerprint evidence is the kind of circumstantial evidence that has been held sufficient to sustain a conviction of burglary in the second degree. *See People v. Murray*, 562 N.Y.S.2d 788 (2d Dep't 1990), *lv. denied*, 77 N.Y.2d 964 (N.Y. 1991); *People v. Sparacino*, 542 N.Y.S.2d 235 (2d Dep't), *lv. denied*, 74 N.Y.2d 747 (N.Y. 1989). In any event, the trial judge gave the jury an adverse inference charge concerning the police officers' failure to photograph the fingerprint prior to lifting it off of the VCR, thereby allowing the jury to find that had such a photograph been taken, the result would have been

unfavorable to the prosecution's case. *See* Tr.[5] 1302-04. Such an instruction was in accordance with New York law concerning the loss or destruction of evidence in a criminal case. *See, e.g., People v. Kelly*, 62 N.Y.2d 516, 521 (N.Y. 1984) ("Although the choice of 'appropriate' action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of evidence."); *see also* Tr. 387-90, 1113-18, 1204-07.

In sum, a review of the evidence in this case shows that it was legally sufficient to establish that Petitioner committed the crime of burglary in the second degree, N.Y. Penal Law § 140.25(2), *i.e.*, he knowingly entered and remained unlawfully in a dwelling with intent to commit a crime therein.

### Expert qualifications

The second argument made in Petitioner's leave application concerned the respective qualifications of a prosecution witness and a defense witness. Petitioner contends that while the trial court qualified a prosecution witness, Lt. Rossetti, as an expert in identifying forged fingerprints, it did not similarly qualify a defense witness, Mr. Holik, who had similar training and experience, thereby depriving Petitioner of a fair trial. Petitioner claims that where, as here, the fingerprint was a key piece of evidence linking him to the crime, and where there was conflicting expert testimony regarding whether the fingerprint was lifted off of the victim's VCR, such differing findings regarding the experts' qualifications was unbalanced and unfair.

When it comes to expert testimony, such testimony "is limited by the requirements of relevancy and by the trial court's traditional discretion to prevent prejudicial or confusing testimony." *Agard v. Portuondo*, 117 F.3d 696, 704 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000). "Where a trial court's purported errors center around excluded evidence, the reviewing federal 'court's duty on a petition for habeas corpus is to determine whether the excluded testimony was material to the presentation of the defense so as to deprive the defendant

---

[5]"Tr." refers to the trial transcript.

of fundamental fairness.' The court must determine whether the exclusion (a) 'was an error of constitutional dimension' and, if so, (b) 'whether the constitutional error was harmless.'" *Gil v. Mazzuca*, 91 F. Supp. 2d 586, 591 (S.D.N.Y. 2000) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988)); *see also Washington v. Shriver*, 90 F. Supp. 2d 384, 387-88 (S.D.N.Y. 2000), *aff'd as amended*, 255 F.3d 45 (2d Cir. 2001); *Agard*, 117 F.3d at 705 ("[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.") (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)). "Generally, however, an evidentiary ruling is not a matter of federal constitutional law." *Washington*, 90 F. Supp. 2d at 387 (internal quotation marks and citation omitted).

With respect to whether the trial judge's decision concerning Petitioner's expert rises to the level of constitutional error, it is important to note that Petitioner "face[s] a high burden in seeking to demonstrate that a trial court's decision . . . is 'contrary to' or an 'unreasonable application of' clearly established federal law." *Gil*, 91 F. Supp. 2d at 591 (citing cases); *see also Agard*, 117 F.3d at 705 ("Erroneous evidentiary rulings rarely rise to the level of harm to this fundamental constitutional right" of a meaningful opportunity to present a defense.). Moreover, the exclusion of expert testimony will be deemed harmless error where the defendant is not prevented from putting an issue before the jury. *See Agard*, 117 F.3d at 706-07 (exclusion of expert testimony did not "ris[e] to the level of constitutional harm because it did not deprive [the defendant] of the opportunity to make an argument to the jury").

Here, Petitioner has failed to meet his burden of establishing constitutional error. In this case, Petitioner does not argue that his expert was prevented from testifying. His only complaint relates to the trial judge's ruling about his expert's qualifications, and Petitioner cites to no case law supporting the proposition that this failure to qualify his expert as an expert in forged fingerprints amounts to constitutional error. The fact is that Petitioner never sought to have his expert qualified as an expert in forgeries. Rather, his attorney at trial said, "Judge, at this time I would move Mr. Holik as an expert in the area of fingerprint comparison, analysis, and lifting."

11

Tr. 1081.  Moreover, even after defense counsel objected that Mr. Holik should have been qualified as an expert in forged fingerprints, he did not seek to have him so qualified when he subsequently recalled Mr. Holik to the stand on surrebuttal.

On direct examination, Mr. Holik stated that he had been hired by the New York State Police PBA in a case involving allegations that a New York State police officer had forged a fingerprint, and a couple of the prosecution witnesses in this case, Inspector Martin and Lt. Rossetti, were among those present during his inspection of that fingerprint.  *See* Tr. 1077-78. During the prosecution's cross-examination, Mr. Holik testified further about his experience in detecting forged fingerprints and conceded that he did not believe the fingerprint in this case was a forgery; rather, the latent print matched Petitioner's fingerprint.  *See* Tr. 1100-04.  On redirect examination, defense counsel asked him whether he thought the latent lift was forged, and Mr. Holik testified that he could not say definitively whether or not it was forged.  *See* Tr. 1140-41.

Based on the foregoing, it is clear that Petitioner was able to put before the jury both his expert's experience with fingerprint forgeries, as well as his expert's opinion about whether the latent fingerprint and/or latent lift in this case was a forgery.  Furthermore, the state trial judge acted within his discretion based on the record before him when he determined the respective experts' qualifications, *see* Tr. 1153-56; *People v. Cronin*, 60 N.Y.2d 430, 433 (N.Y. 1983) ("The admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court, and review beyond the intermediate appellate level is generally unwarranted.") (citation omitted), and such determination did not render Petitioner's trial fundamentally unfair.[6]

### Prosecutorial vouching in summation

The final argument made in Petitioner's leave application concerned comments made by the prosecutor in his summation regarding the credibility of prosecution witnesses.  Petitioner argues that the prosecutor improperly vouched for the prosecution's witnesses, including one of

---

[6]Moreover, the trial judge instructed the jury that the experts' opinions were not controlling and were entitled to as much weight as the jurors wished to assign them.  *See* Tr. 1306-08 (charge regarding expert testimony).

its fingerprint experts, thereby diminishing the burden of proof and depriving Petitioner of a fair trial.

According to the record, defense counsel said in his summation, "All it takes, Ladies and Gentlemen, for a fingerprint to get from one place to another place is one officer who is not doing his job." Tr. 1247. He said that police officers could be overzealous, and that there was testimony that police officers in New York State had overstepped the line when it came to fingerprints. *Id.* 1248. Defense counsel also made statements concerning a document in evidence known as a Quality Assurance Review report and what it states regarding the authenticity of the latent print, as well the fact that Lt. Rossetti, one of the prosecution's fingerprint experts, had signed it. *Id.* 1251. He also commented on the timing of Lt. Rossetti's examination of the evidence on December 5, 1997, suggesting that it was questionable. *Id.* 1252. He declared, "I submit to you that the initial determination made by the State Police in the Quality Assurance Review, as well as Mr. Holik's testimony before you, is the one that you should rely upon and that you should make a determination upon and not rely upon the print that the People have put before you." *Id.* 1253.

In response, the prosecutor made the statements in issue. First, with respect to the police officers, he said:

> And I submit to you that the officers who testified about this fingerprint, in the lifting of it and then the analysis of it, were straightforward and frank.
> And why should these officers, what would be their motive in a burglary case like this, to move a print from one place to another for this defendant? I submit to you, there is no motive for the police . . .

Tr. 1269.

In addition, with respect to Lt. Rossetti, the prosecutor stated:

> . . . But I submit to you that Vincent Rossetti, Lieutenant Rossetti, is a different type of expert than the others and you should be careful when you look at his testimony before you mix him with the others.
> He's the head of the New York State Police Forensic Unit. His job depends upon verifying when fingerprints have been tampered with and he testifies in court. He puts people in jail. His

> testimony is reliable and he is somebody who has been qualified in
> many cases to do this kind of an examination.
> So when I asked Mr. Rossetti to come down here in
> response to the claim that that was manufactured, I submit to you
> that he's not merely comparing prints, he's looking to see if there is
> any irregularity.
> And do you think that if there was any problem under the
> microscope, either on the latent lift, on the VCR, or any other
> manner, that he would somehow stand up for these officers? . . .

Tr. 1269-70.

Defense counsel did not object to either of these statements.

When it comes to granting habeas relief on the basis of prejudicial statements made by a prosecutor in summation, the conduct must be particularly reprehensible since "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985). "A petitioner must show 'more than mere trial error'; he must demonstrate that the challenged remarks, when viewed in context were 'so egregious' as to have 'a substantial and injurious effect or influence in determining the jury's verdict.'" *Flores v. Greiner*, No. 97 CV 5671, 2000 WL 1052054, at *12 (E.D.N.Y. June 19, 2000) (quoting *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998)).

Courts recognize the difference between prosecutors arguing for the credibility of their witnesses based on the evidence in the case, which is what occurred here, *see, e.g., Flores*, 2000 WL 1052054, at *12, and prosecutors making a comment which places the prestige of the Government behind the witness' veracity or is premised on information outside of the record, commonly referred to as "vouching" for the credibility of a witness. *See, e.g., United States v. Eltayib*, 88 F.3d 157, 172-73 (2d Cir. 1996) (discussion therein). In this case, the prosecutor did not vouch for the credibility of either the police officers or Lt. Rossetti. Rather, he was simply responding to comments made by defense counsel in summation, making arguments based on the evidence in the case. *See United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) ("A prosecutor may not properly vouch for the credibility of a witness. However, the government is allowed to respond to an argument that impugns its integrity or the integrity of its case, and when the defense

counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion.") (internal quotation marks and citations omitted). The fact that the prosecutor prefaced some of his comments with the words, "I submit to you that," does not change the outcome. *See Eltayib*, 88 F.3d at 173 ("[T]he phrase 'I submit' expresses not a personal belief but a contention, an argument, which, after all, is what a summation to the jury is meant to be.").

Viewing the prosecutor's summation as a whole, he said nothing giving rise to a federal constitutional claim, and this cannot provide a basis for habeas relief.

## II.  **Supplemental Petition for Writ of Habeas Corpus**

Petitioner's supplemental petition, submitted several months after his original petition, was intended to supplement his argument set forth in Ground 4 of the original petition, namely, that improprieties occurred prior to his indictment on the burglary charge which deprived him of his rights and somehow vitiated his conviction on this charge. Petitioner's claim stemmed from his belief that there was some question or issue concerning which indictment was responsible for the instant conviction and that there was more than one indictment rendered. Toward that end, he made two applications, on August 16, 2002 and September 26, 2002, pursuant to N.Y. Crim. Proc. Law § 610.20, to get subpoenas *duces tecum* issued to the District Attorney's office so that they might produce a copy of a second indictment related to Petitioner as well as a copy of a felony complaint that he believed existed. However, that statute gives subpoena power to obtain witnesses for criminal actions or proceedings. Apparently, these applications were denied by the state court. *See* Resp't Ex. 43 at 2.[7] The supplemental petition was intended to inform the Court of Petitioner's efforts to obtain these additional documents in support of his claim in Ground 4 of his original petition.

---

[7]After filing his § 440.10 motion, Petitioner filed another, similar motion pursuant to N.Y. Crim. Proc. Law §§ 240.20 and 610.20, seeking discovery and the issuance of a subpoena *duces tecum*. *See* Resp't Ex. 44. This motion, too, was denied, *see* Resp't Ex. 43, and Petitioner tried to appeal that decision to the Appellate Division when he sought leave to appeal the denial of his § 440.10 motion. *See* Resp't Ex. 44.

For the reasons stated in the discussion of Ground 4, *supra*, this claim been procedurally defaulted. Therefore, Petitioner's supplemental petition should be denied.

## III.   Petitioner's § 440.10 Motion to Vacate the Judgment

The state court judge found that some of the ten points raised by Petitioner in his § 440.10 motion had been procedurally defaulted: Point 5 (Petitioner's attorney failed adequately to put the court on notice to suppress all evidence of the People's case), Point 6 (the court was in error when it improperly amended the indictment), Point 9 (Petitioner's attorney of record was ineffective in his failure to move to preclude the fingerprint evidence prior to trial), and Point 10 (the court impermissibly adjudicated Petitioner as being a persistent violent felony offender). *See* Resp't Ex. 42. The state court judge cited N.Y. Crim. Proc. Law § 440.10(2)(c), which states that a court must deny a motion to vacate a judgment where sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised, and the defendant unjustifiably failed to raise such ground or issue upon an appeal actually perfected by him. He found that all of the arguments set forth in these points could, and should, have been raised on direct appeal from the conviction. *See, e.g.,* Resp't Ex. 42 at 8 ("Where sufficient facts appear on the record to permit the question to be reviewed, it is to be only reviewed by direct appeal. People v. Cooks, 67 N.Y.2d 100; People v. Gonzalez, 158 A.D.2d 615 (Second Dept. 1990)."). Therefore, not only have these claims been procedurally defaulted in state court,[8] but they have been procedurally defaulted in this Court, and Petitioner has failed to demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Gillespie*, 2004 WL 1689735, at *13 ("The Second Circuit has made clear that federal habeas

---

[8]The Appellate Division denied Petitioner leave to appeal in a summary Decision & Order. *See* Resp't Ex. 47. Therefore, the "last reasoned" court decision expressly found that these claims were procedurally defaulted. *See Ylst*, 501 U.S. at 803 ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.") (internal quotation marks and citations omitted). Therefore, his claims for habeas relief on the grounds set forth in Points 5, 6, 9, and 10 should be denied.

The other points raised in Petitioner's § 440.10 motion similarly do not provide a basis for habeas relief. A number of them involve Petitioner's claims about whether he was properly arraigned and indicted on the burglary charge and whether the trial court ever had proper jurisdiction over his case. In essence, Petitioner used his § 440.10 motion to revive the procedurally defaulted challenge to his conviction set forth in Ground 4 of his original petition. In Point 1, Petitioner claimed that the trial court never obtained legal jurisdiction to try the case because the case was never legally commenced; in Point 3, he claimed that he was not properly or legally arraigned; and in Point 8, Petitioner claimed that the court was procedurally and jurisdictionally barred from trying and convicting him on a jurisdictionally defective indictment. *See* Resp't Ex. 39.

As noted in the state court decision, Petitioner's claims stem from his erroneous belief that two separate indictments were brought against him, but that he was arraigned and tried on only one of them.[9] However, as the court explained, *see* Resp't Ex. 42 at 5-6, only one indictment was brought against Petitioner – No. 103/97 – charging him with one count of burglary in the second degree. That indictment was a direct presentation to the grand jury, which voted on August 14, 1997, and reported to County Court on August 26, 1997. Petitioner was arraigned on the indictment on August 27, 1997, after which the case proceeded to trial. The state court found that there was nothing illegal or improper with respect to Petitioner's arraignment on the indictment and that he was afforded his constitutional rights and represented by the Public Defender's Office. *Id.* at 7. The court concluded that "defendant's incorrect statement of the facts and

_____

[9]Point 8 was based on an alternative erroneous belief that the indictment containing the burglary charge was jurisdictionally defective since it failed to include the drug charge for which Petitioner was arrested and which was held for action by the grand jury, but which was subsequently dismissed.

unsubstantiated beliefs as to the existence of a second indictment cause his arguments under Points One, Three and Eight to be fatally flawed. His motion to vacate the judgment on those bases is denied." *Id.*

Likewise, this Court finds that Petitioner raises no federal constitutional claim regarding his arraignment and indictment on the burglary charge.[10] There is nothing in the record to support his belief that more than one indictment exists or that the indictment voted by the grand jury on the burglary charge was somehow defective. Petitioner was represented by counsel at the arraignment and throughout all of the proceedings both leading up to, and during, the trial. Any claims that he might have concerning the grand jury proceedings are not cognizable in this federal habeas corpus proceeding. *See Lopez v. Riley*, 865 F.3d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."); *Beverly v. Walker*, 899 F. Supp. 900, 908 (N.D.N.Y. 1995) ("[A] petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error by establishing both that there was probable cause to indict the defendant and that the defendant was actually guilty beyond a reasonable doubt.") (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986)), *aff'd*, 118 F.3d 900 (2d Cir. 1997).

Moreover, to the extent that Petitioner might be challenging the sufficiency of the indictment, such a claim is not cognizable on federal habeas review unless it is based on a failure to meet the requirements of due process, *i.e.*, a failure to inform the defendant "in general terms, of the time, place, and essential elements of the crime." *Parrilla v. Goord*, No. 02 Civ. 5443, 2005 WL 1422132, at *9 (S.D.N.Y. June 20, 2005) (internal quotation marks and citations omitted); *see also DeVonish v, Keane*, 19 F.3d 107, 108 (2d Cir. 1994) (*per curiam*) ("An indictment is sufficient when it charges a crime [1] with sufficient precision to inform the

---

[10]Indeed, Point 1 of his § 440.10 motion is based entirely on state criminal procedure law, which also forms the main thrust of his argument in Point 8 of the motion.

defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.") (internal quotation marks and citations omitted). The indictment in this case satisfies the constitutional requirements of due process as it both tracks the language of the statute, N.Y. Penal Law § 140.25(2), and sets forth the time and place of the alleged crime.

Therefore, the arguments set forth in Points 1, 3, and 8 of Petitioner's § 440.10 motion cannot provide a basis for habeas relief.[11]

In Point 2 of his § 440.10 motion, Petitioner claims ineffective assistance of counsel based on his counsel's failure to investigate properly and determine any and all pertinent facts concerning his case. He alleges deficiencies in his counsel's performance from the time of his arrest on July 5, 1997, when counsel failed to recognize that the arrest was for the burglary charge, through the jurisdictional problems concerning the indictment, and during the trial, when counsel failed to ascertain whether Mr. Suchy was a proper complainant. *See* Resp't Ex. 39. Citing New York law, the state court, in deciding the motion, found that Petitioner's claim lacked merit. *See* Resp't Ex. 42 at 14 ("To prevail on a claim of ineffective assistance of counsel, a defendant, must demonstrate, that under the particular facts of his case, he was denied 'meaningful representation.' People v. Burgos, 238 A.D.2d 348 (Second Dept. 1997), app. den. 90 N.Y.2d 902; Baldi, supra. The defendant has not made any such demonstration in this case.").

To state a valid claim for ineffective assistance of trial counsel in this habeas proceeding, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), that (1) his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688; and (2) his attorney's deficient performance prejudiced him, *i.e.*, a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

---

[11]In Point 4 of the motion, Petitioner requests a hearing regarding the question of whether there were two indictments issued. Again, this is based on his erroneous belief and does not raise a constitutional claim upon which relief may be granted in a habeas proceeding.

Looking at the grounds for Petitioner's ineffective assistance of counsel claim, any arguments related to his arrest and indictment, as explained above, do not provide a basis for habeas relief.[12] There is no evidence in the record that Petitioner was arrested on the burglary charge when he was arrested on July 5, 1997. Therefore, his counsel did not err in failing to tell Petitioner that the arrest was on that charge. Furthermore, any jurisdictional problems concerning the indictment stem from Petitioner's erroneous beliefs. Therefore, they cannot form the basis of a claim of ineffective assistance of counsel.

Moreover, Petitioner's claim concerning Mr. Suchy is based on the testimony of Detective Hendryk, the walk-in complaint detective for the City of Poughkeepsie Police Department. Detective Hendryk, who was called as a defense witness, testified that Mr. Suchy was the complainant with respect to the burglary, and Petitioner seems to be arguing that his counsel erred in allowing this testimony since without a complainant, there could be no finding that Petitioner had committed the crime.[13] However, Detective Hendryk further testified regarding the fact that Mr. Suchy was unable to identify Petitioner as the perpetrator on two separate occasions following the burglary. *See* Tr. 1033-37. There is no basis for finding that the admission of this testimony was erroneous or prejudicial to Petitioner in any way, *see Alvarez v. Scully*, 833 F. Supp. 1000, 1005–06 (S.D.N.Y. 1993) ("An erroneous evidentiary ruling could rise to the level of a constitutional claim cognizable on a habeas petition if it were shown that the error so infected the proceedings as to have rendered a petitioner's trial fundamentally unfair.") (citations omitted); *Mitchell v. Smith*, 481 F. Supp. 22, 25 (E.D.N.Y. 1979) ("State Court evidentiary rulings normally do not rise to a constitutional level so as to be redressable in a federal habeas corpus proceeding absent a showing that the challenged rulings infringed on one of a petitioner's specific

---

[12]It should be noted that under New York law, a person need not be arrested on a charge, or even charged with a crime, before a grand jury is allowed to hear evidence, and vote an indictment, on that charge. *See* N.Y. Crim. Proc. Law § 190.55.

[13]In addition, Petitioner seems to be arguing that without a complainant, the indictment on the burglary charge would be jurisdictionally defective. Again, any arguments concerning the indictment cannot provide a basis for relief in this habeas proceeding.

constitutional rights."), *aff'd*, 633 F.2d 1009 (2d Cir. 1980), and Petitioner's trial counsel did not perform unreasonably in presenting this testimony to the jury.

In sum, the alleged deficiencies in trial counsel's performance cited by Petitioner neither rendered counsel's performance objectively unreasonable, nor did they prejudice Petitioner. Therefore, he cannot claim that he was denied effective assistance of counsel, and this cannot provide a basis for habeas relief.

In Point 7, Petitioner claims that the prosecution engaged in unethical behavior since the prosecutor never intended to prosecute him for criminal possession of a controlled substance in the fourth degree which he was charged with on July 5, 1997. Relying on state law, the state court judge found that this claim had no merit. *See* Resp't Ex. 42 at 9-11. This claim in no way implicates a violation of Petitioner's federal constitutional rights, and therefore, it fails to provide the basis for relief in a habeas proceeding. 28 U.S.C. § 2254(a); *see Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

## CONCLUSION

Based on the foregoing, I respectfully recommend that Your Honor deny, in their entirety, Petitioner's petition, and supplemental petition, for a writ of habeas corpus, as amended to include the additional ten claims asserted in his N.Y. Crim. Proc. Law § 440.10 motion.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days (*see* Fed. R. Civ. P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains, New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White

appellate review of any order to judgment that will be entered by Judge Karas. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Karas and should not be made to the undersigned.

Dated: November 7, 2007
White Plains, New York

Respectfully submitted,

MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Kenneth M. Karas

Mr. Bruce Wright (98-A-6125)
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York, 12582-0010

Bridget R. Steller, Esq.
Assistant District Attorney
236 Main Street
Poughkeepsie, New York 12601