UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE WRIGHT,

                Petitioner,

    v.

SUPERINTENDENT POOLE,
Five Points Correctional Facility,

                Respondent.

USDS SDN.
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

Case No. 02-CV-8669 (KMK)(MDF)

ORDER ADOPTING REPORT AND
RECOMMENDATION

KENNETH M. KARAS, District Judge:

On December 9, 1997, a jury in Dutchess County, New York, convicted Bruce Wright

("Petitioner") of second degree burglary. On September 29, 1998, the trial judge sentenced

Petitioner to twenty years in prison as a Persistent Violent Felony Offender. *See People v.*

*Wright*, 724 N.Y.S.2d 351 (App. Div. 2001). The Appellate Division affirmed Petitioner's

conviction, *id.*, and the Court of Appeals denied Petitioner's request for leave to appeal. *See*

*People v. Wright*, 759 N.E.2d 382 (mem.) (N.Y. 2001). On October 30, 2002, Petitioner,

proceeding pro se, filed a petition for writ of habeas corpus with this Court under 28 U.S.C.

§ 2254 (the "Petition"). (Dkt. No. 1.) The Court referred the case to Magistrate Judge Mark D.

Fox pursuant to 28 U.S.C. § 636(b).[1] Magistrate Judge Fox permitted the Petition to stay pending

for several years so that Petitioner could attempt to exhaust his state remedies by filing a

collateral appeal under New York Criminal Procedure Law section 440.10. (Dkt. No. 11.) On

---

[1] This case was referred to Magistrate Judge Fox by Judge Colleen McMahon, to whom
this case initially was assigned. The case was reassigned to this Court on August 6, 2007. (Dkt.
No. 19.)

June 30, 2005, a New York trial court denied Petitioner's section 440.10 motion (Aff. in Answer to a Petition for a Writ of Habeas Corpus ("Resp't Ex.") 42), and the Appellate Division denied leave to appeal on December 1, 2005, (Resp't Ex. 47). Magistrate Judge Fox subsequently issued a Report and Recommendation ("R&R") concluding that the Court should refuse to further stay this proceeding and should deny the Petition in all respects. (Dkt. No. 21.) Petitioner submitted timely objections to Magistrate Judge Fox's R&R. (Objections to Magistrate's R&R ("Obj.").) For the reasons set forth herein, the Court adopts the R&R in its entirety and dismisses the Petition.

## I. Background

The Court adopts the factual and procedural background of this case as set forth in the R&R on pages 1-5, and assumes the Parties are familiar therewith.

## II. Discussion

### A. Standard of Review

#### 1. Review of Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days

2

when service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(c)-(f), *see* Fed. R. Civ. P. 6(d).

Where a party submits timely objections to a report and recommendation, as Petitioner has here (Dkt. No. 23), the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which 'no specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed.R.Civ.P. 72(b)(2)).

## 2. Review of Petition for Habeas Corpus Relief

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Thus, Petitioner is entitled to habeas corpus relief only if he can show that "the state court 'unreasonably' applied law as established by the Supreme Court in ruling on [P]etitioner's claim, or made a decision that was 'contrary to' it." *Cousin v. Bennett*, 511 F.3d 334, 337 (2d Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)). "While 'the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones' is somewhat unclear, 'it is well-established in [the Second] Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that petitioner must identify

3

some increment of incorrectness beyond error in order to obtain *habeas* relief.'" *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (quoting *Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003) (internal alterations omitted) (emphasis in original)). The state court's determination of factual issues is presumed correct, and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006).

### B. Analysis

#### 1. Petitioner's Objection to Magistrate Judge Fox's January 27, 2006 Order

Petitioner objects to Magistrate Judge Fox's decision to deny Petitioner's request for a stay of these proceedings. (Obj. ¶ 2.) The Court construes Plaintiff's objection as a request to set aside Magistrate Judge Fox's January 27, 2006 Order. (Dkt. No. 11.)[2] Petitioner wanted a further stay so that he could pursue a writ of error *coram nobis* in the Appellate Division, but Magistrate Judge Fox recommended denial of that application in the January 27, 2006 Order. (R&R 2.) In Petitioner's section 440.10 motion, the New York trial court had ruled that Points 5, 6, 9, and 10 were procedurally defaulted, because they were not raised in Petitioner's direct appeal. (Resp't Ex. 42; R&R 2.) Petitioner apparently believes he can prevent these claims from being defaulted in his federal habeas Petition by first pressing them by way of a writ of error *coram nobis* in the Appellate Division. (R&R 2; Dkt. No. 11.) However, "the writ of error coram nobis lies in the

---

[2] Pleadings submitted by pro se litigants are held to a lesser standard than those drafted by practicing attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2007) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Petitioner is proceeding pro se, the Court construes his pleadings liberally so as to interpret them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

4

state appellate court only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks and alterations omitted); *see also Tineo v. Heath*, No. 09-CV-3357, 2012 WL 4328361, at *6 (E.D.N.Y. Sept. 19, 2012) (same). None of the claims which Petitioner presses in this habeas proceeding is for ineffective assistance of appellate counsel. It would therefore be futile to stay these proceedings while Petitioner pursues a writ of error *coram nobis*. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (noting that "district courts should place reasonable time limits on a petitioner's trip to state court and back" and "structur[e] the stay" in a manner consistent with "the timeliness concerns reflected in" the AEDPA); *Postley v. Rozum*, No. 08-CV-4479, 2009 WL 5217074, at *4 (E.D. Pa. Dec. 30, 2009) (applying *Rhines* and denying stay as futile where unexhausted claims clearly were procedurally defaulted in state court); *Morris v. Phillips*, No. 04-CV-4597, 2006 WL 3694545, at *1 n.2 (E.D.N.Y. Dec. 13, 2006) (denying a stay to exhaust three claims in state court because pressing the claims in state court "would be futile since they would be time-barred"). Accordingly, Magistrate Judge Fox correctly denied Petitioner's request to further stay this proceeding. (R&R 2, 4.)[3]

Importantly, however, Magistrate Judge Fox also recommended that the Court deem the Petition amended to include the claims raised in Petitioner's section 440.10 motion. (R&R 4.)

---

[3] Petitioner now claims that Magistrate Judge Fox misunderstood his intentions and that he actually wanted to use the writ of error *coram nobis* to assert that his appellate counsel was ineffective for failing to raise Points 5, 6, 9, and 10 of his section 440.10 motion on direct appeal. (Obj. ¶ 2.) Even if this is true, Petitioner's stay request should still be denied because, as explained below, in subsection II(B)(5)(a), this assertion of ineffective assistance is plainly meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a "district court would abuse its discretion if it were to grant . . . a stay" so that a Petitioner could attempt to exhaust claims which are "plainly meritless").

5

*See Marin v. Cunningham*, No. 05-CV-3245, 2007 WL 2479855, at *3 (E.D.N.Y. Aug. 27, 2007) ("Because petitioner is *pro se*, I will deem his petition amended to assert the broader range of ineffective assistance points that his state appellate lawyer may have attempted to raise in the Appellate Division." (emphasis in original)); *Clarke v. Goord*, No. 07-CV-0366, 2007 WL 2324965, at *1 (E.D.N.Y. Aug. 10, 2007) ("[I]n his reply memorandum of law, petitioner raised, for the first time, an ineffective assistance of appellate counsel claim. . . . In light of petitioner's *pro se* status, this court deems the petition amended to raise this claim . . . ."); *Boyd v. Smith*, No. 03-CV-5401, 2004 WL 2915243, at *5 n.5 (S.D.N.Y. Dec. 17, 2004) ("[T]he Court deems the petition amended to include the ineffective assistance claim."). In his extensive objections to the R&R, Petitioner does not object to this amendment and, indeed, appears to embrace it. (*See* Obj. ¶¶ 1, 5-9 (insisting that his section 440.10 motion is "part of the record," that he previously filed an "application for an amended petition" to raise those claims, and addressing the merits of Points 5,6, 8, and 9 of his section 440.10 motion).) Accordingly, the Court follows Magistrates Judge Fox's recommendation and deems the Petition amended to include all claims raised in Petitioner's section 440.10 motion.

### 2. Petitioner's Request for a Stay of the Proceedings in this Court

By letter dated January 22, 2007, Petitioner requested another stay so that a state court could address issues which would put Ground Four of his original Petition in the proper legal context and perspective. (R&R 3.) Staying a habeas petition while a petitioner seeks to exhaust unexhausted claims in state court "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust" and when the "unexhausted claims are [not] plainly meritless." *Rhines*, 544 U.S. at 277. Here, Petitioner fails to satisfy either requirement. Ground Four asserts certain irregularities in the Indictment upon which Petitioner

6

was convicted. As explained more extensively below, Ground Four is procedurally defaulted because Petitioner did not assert it in his request for leave to appeal to the Court of Appeals. *See infra* subsection II(B)(3)(b).

Petitioner claims that he had "good cause" for failing to exhaust Ground Four because his counsel on direct appeal was ineffective in failing to raise it. In order to show ineffectiveness of appellate counsel, a petitioner must show that appellate counsel selected grounds for appeal unreasonably, such as by "omitt[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (internal quotation marks omitted); *see also Tatum v. Lempke*, No. 10-PR-3801, 2012 WL 1958941, at *3 (2d Cir. Jan. 1, 2012) (same); *Gomez v. Brown*, 655 F. Supp. 2d 332, 347 (S.D.N.Y. 2009) (same). For the reasons explained below, the Court finds that appellate counsel was not ineffective, because the claims appellate counsel pressed were reasonable, though not ultimately persuasive, while Petitioner's perceived irregularities in his Indictment are fanciful. *See infra* subsection II(B)(3)(b). Likewise, even if Petitioner could find some other good cause for failing to exhaust Ground Four, *Rhines* would still require that the Court deny Petititioner's stay request because Ground Four is "plainly meritless." *Rhines*, 544 U.S. at 277. Finally, a stay would be futile because a New York court would deny as procedurally defaulted any attempt to collaterally attack Petitioner's conviction in state court based on Ground Four. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . no . . . appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal . . . ."). Thus, this Court denies Petitioner's January 22, 2007 request to further stay this proceeding.

7

### 3. Original Petition for Writ of Habeas Corpus

The original habeas Petition is divided into five grounds for relief.

#### a. Ground One

The first ground is that the Appellate Division erred by allowing the state to file an untimely supplemental brief and by denying Petitioner's request for reargument after affirming his conviction. A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). Plaintiff's claims about the timing of submissions to the Appellate Division regard only state procedural matters that do not arise from the Federal Constitution. *Cf. Goodwin v. Duncan*, 668 F. Supp. 2d 509, 518 (W.D.N.Y. 2009) (holding that prosecution's failure to comply with state witness notice provision was not cognizable in federal habeas petition because the rule is a "creation of state statute" and did not arise from the federal constitution); *Bracamonte v. Ryan*, No. 10-CV-164, 2010 WL 7284599, at *3 (D. Ariz. Oct. 22, 2010) (recommending denial of habeas petition on procedural grounds where petitioner failed to submit timely supplemental brief to state appellate court), *adopted by* No. 10-CV-164, 2011 WL 3566168 (D. Ariz. Aug. 15, 2011). Accordingly, Ground One does not provide a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

#### b. Grounds Two Through Four

Grounds Two through Four contain objections to the jury instructions, the admission of certain eyewitness testimony, and the Indictment, respectively. Each must be dismissed because of procedural default. "An application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A petitioner's failure to exhaust his state remedies will not be excused unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." (citations and internal quotation marks omitted)).

In order to exhaust his state court remedies regarding Grounds Two through Four, Petitioner was required to raise these claims in his leave application to the New York Court of Appeals. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (dismissing as procedurally defaulted three habeas claims that petitioner "pressed before the Appellate Court of Illinois," but failed to "include[] in his petition for leave to appeal to the Illinois Supreme Court"); *see also Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) ("To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts, to the highest court in the pertinent state." (citation and internal quotation marks omitted)). Petitioner failed to do so. Along with his leave application, Petitioner submitted a supplemental pro se brief discussing Grounds Two through Four. (Resp't Exs. 35, 37; R&R 7 n.3.) But his leave application itself (submitted by appellate counsel) did not make reference to the pro se brief or to any of the issues raised therein. (Resp't Exs. 35, 37; R&R 7 n.3.) Instead, the leave application simply stated that "[t]he case presents the following issues

9

that warrant consideration by the Court of Appeals." (Resp't Ex. 35 at 1.) It then proceeded to list three issues (numbered one through three). (*Id.* at 1-2.) This list did not include any of the issues discussed in the attached pro se brief. (Resp't Ex. 37.)

In *Grey v. Hoke*, 933 F.2d 117 (2d. Cir. 1991), a habeas petitioner submitted to the New York Court of Appeals his Appellate Division brief, which raised three claims, and a letter arguing only one of them in a letter application. The Second Circuit found that the two claims not argued in the letter were not properly presented, proclaiming that the Court of Appeals has no "duty to look for a needle in a paper haystack." *Id.* at 120 (internal quotation marks omitted); *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) ("Even if the original Appellate Division briefs are submitted along with the leave application, New York's highest court has no duty to look for a needle in a paper haystack." (internal quotation marks omitted)). While the Second Circuit also has ruled that a habeas petitioner properly raised the issues in his Appellate Division brief by simply submitting the brief to the Court of Appeals with the statement that "[t]he appellant hereby requests leave to appeal to this Court," *Galdamez v. Keane*, 394 F.3d 68, 75 (2d Cir. 2005), it so held only because the Petitioner there, unlike in *Grey*, did not "affirmatively direct[] the Court of Appeal's attention *away* from claims contained in the attached briefs," *id.* at 76 (emphasis in original).

Here, Petitioner "affirmatively directed the Court of Appeal's attention *away* from the claims in the attached [pro se] brief[]," *id.*, by stating in his leave application that "[t]he case presents the following issues that warrant consideration by the Court of Appeals," and then failing to mention any of the claims contained in the pro se brief, (Resp't Ex. 35; R&R 7 n.3). This case is thus like *Grey*: Petitioner diverted attention from the issues raised in attached brief by exclusively discussing other issues in his application. This Court is thus inclined to follow

10

Magistrate Judge Fox's recommendation and find that Grounds Two, Three, and Four of the original Petition are procedurally defaulted. *See Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (holding that petitioner failed to exhaust all his claims where application to the Court of Appeals focused on only one claim and made passing reference to other claims in attached brief to the Appellate Division); *Hayward v. Brown*, No. 09-CV-6495, 2010 WL 2629037, at *28 (S.D.N.Y. July 1, 2010) ("Second Circuit and district court decisions within the Circuit have applied *Grey* and *Jordan* to situations where the defendant discussed one or more issues at length and also referred to enclosed Appellant Division briefs, without specifically asking the Court of Appeals to review other issues in the enclosed briefs.").

Petitioner objects to this recommendation. He seeks to overcome the procedural bar by asserting that his appellate counsel was ineffective in failing to raise the now procedurally-barred claims on direct appeal. (Obj. ¶ 11.) As noted, a petitioner can overcome a procedural bar by showing "cause for the default and actual prejudice." *Coleman*, 501 U.S. at 750. Good cause can exist where "the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (internal quotation marks omitted). However, counsel will only be found ineffective where his or her performance was so deficient that it "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and where that deficiency caused the defendant prejudice, *id.* at 692.

A court must be careful not to second guess counsel's tactical choices "simply because the chosen strategy has failed." *United States v. Helgesen*, 669 F.2d 69, 72 (2d Cir. 1982). "In the appellate context, it is not enough for a petitioner claiming ineffective assistance to simply argue that counsel did not raise certain non-frivolous arguments on appeal, as no duty to raise every such argument exists." *Jackson v. Morgenthau*, No. 07-CV-2757, 2009 WL 1514373, at *11

11

(S.D.N.Y. May 28, 2009) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)); *see also Jones v. Barnes*, 463 U.S. 745, 752-54 (1983) (noting that where an attorney exercises reasonable professional judgment in selecting the most promising issues to raise on appeal, a reviewing court should not second guess that judgment); *Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001) ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)) (internal quotation marks omitted)). Thus, Petitioner must show that appellate counsel unreasonably selected the grounds for appeal, such as by "omitt[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Stinson*, 214 F.3d at 322 (internal quotation marks omitted).

Petitioner apparently believes that his appellate counsel's ineffectiveness is established by the mere fact that counsel did not raise some claims on direct appeal, thereby preventing Petitioner from raising them now. (Obj. ¶ 11.) But, of course, the "good cause" exception would swallow the procedural default rule if counsel were automatically ineffective simply for allowing a procedural default to occur as to certain arguments. Instead, counsel may strategically "winnow[] out weaker arguments on appeal" and focus the court's attention on those counsel believes are "more likely to prevail." *Murray*, 477 U.S. at 536.

On direct appeal, Petitioner's lawyers focused on the weight and sufficiency of the evidence, the trial judge's failure to qualify a defense witness as an expert in identifying forged fingerprints, and the prosecutor's allegedly improper vouching for the credibility of the state's witnesses. (Resp't Ex. 17.) As will be explained below, these claims are insufficient to form the basis for federal habeas relief. *See infra* Subsection II(b)(3)(c). But the Court notes that these claims were hardy frivolous. Likewise, it was reasonable for appellate counsel to focus the Court

of Appeals' attention on the prosecutor's alleged vouching given that the prosecutor's summation was not a model of propriety.

By contrast, the arguments which Petitioner now insists that appellate counsel should have raised (i.e., Grounds Two through Four of the Petition), are frivolous, bordering on incomprehensible. Ground Two of the Petition asserts that the trial court wrongly "acknowledged that direct evidence existed in the case at bar." (Dkt. No. 1, Petition at 12(b).) The court did so, according to Petitioner, by giving "direct evidence instructions when they were not needed" since "no[] [direct evidence] existed." (Dkt. No. 1, Petition Mem. of Law at Ground Two.). But because the state *did* present direct evidence in its case (R&R 4 ("Through *direct* and circumstantial evidence, the State established . . . that a second floor apartment over a garage had been broken into and ransacked while the occupant was not present." (emphasis added)), it was not improper for the judge to instruct the jury that it could consider direct evidence.

Ground Three objects to the testimony of Romuald and Maria Suchy. The Suchys were the victim's neighbors. They testified that they saw the burglar leaving the garage. (R&R 4.) While they provided a general description of the burglar and noted that he dropped a VCR, they did not identify Petitioner as the culprit. (*Id.*) Petitioner insists that there was "no foundation" for this testimony and that "the Court should have established specific parameters as to what extent the witness would have been allowed to describe the perpetrator." (Dkt. No. 1, Petition at 12(c).) But Petitioner provides no specific, comprehensible reason for limiting or excluding this obviously relevant eyewitness testimony.

Ground Four alleges a number of problems related to the Indictment. Specifically, Petitioner asserts that: (1) he was not properly informed of the charges against him because he was arrested on an unrelated charge and only later indicted for the burglary; (2) he was deprived

13

of his right to appear before the grand jury; (3) a felony complaint should have been filed; and (4) the court did not have jurisdiction to proceed. (Dkt. No. 1, Petition at 12(d).) But under New York law, the state is allowed to proceed via an indictment rather than a complaint, *see* N.Y. Crim. Proc. Law § 190.55(2)(c), and a defendant only has a right to testify before the grand jury under limited circumstances, *see id.* § 190.50(5)(a), which Defendant does not allege existed. Moreover, the Dutchess County court had jurisdiction to try Defendant, because the charged crime occurred in Dutchess County. *See People v. Greenberg*, 678 N.E.2d 878, 879 (N.Y. 1997) ("Under our State Constitution and common law, a defendant has the right to be tried in the county where the crime was committed . . . .").[4]

Accordingly, Petitioner has not demonstrated that the arguments omitted from his direct appeal were "significant and obvious" or that those included were "clearly and significantly weaker." *Stinson*, 214 F.3d at 322 (internal quotation marks omitted). Petitioner has thus failed to show good cause for his default. Moreover, given the weakness of the defaulted claims, Petitioner did not suffer prejudice due to appellate counsel's failure to include those claims in Petitioner's leave application. Grounds Two through Four of the original Petition therefore cannot provide the basis for federal habeas relief.

### c. Ground Five

Ground Five reasserts the three arguments made in Petitioner's application for leave to appeal to the New York Court of Appeals. (Dkt. No. 1, Petition at 13.) First, he challenges the weight and sufficiency of the evidence. A challenge to the weight of the evidence raises no

---

[4] In any event, even if Ground Four had been preserved, Petitioner has not explained how any of the alleged errors in the Indictment amounted to a violation of any federal right. *See* 28 U.S.C. § 2254(a).

14

constitutional claim and thus cannot form the basis for federal habeas relief. *See Stallings v. Heath*, No. 11-CV-4894, 2012 WL 735399, at *18 (S.D.N.Y. Mar. 7, 2012) ("It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review."), *adopted by* No. 11-CV-4894, 2012 WL 1538513 (S.D.N.Y. May 2, 2012); *Woullard v. Phillips*, No. 04-CV-2225, 2007 WL 1958971, at *7 (S.D.N.Y. July 6, 2007) (same).

A challenge to the sufficiency of evidence does raise a constitutional claim, but Petitioner has not met the "very heavy burden" required to establish it. *Woullard*, 2007 WL 1958971, at *5 (internal quotation marks omitted). To succeed, the Petitioner must establish that no "rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, "[t]he resolution of issues of credibility . . . is exclusively the province of the jury, whose determination may not be overturned lightly." *Goston v. Rivera*, 462 F. Supp. 2d 383, 392 (W.D.N.Y. 2006); *see also United States v. Khan*, 53 F.3d 507, 514 (2d Cir. 1995) ("[T]he credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determinations with our own.").

Here, Petitioner challenges the jury's assessment of credibility. In addition to finding Petitioner near the spot where some of the stolen goods were recovered, the prosecution relied on a latent fingerprint of Petitioner which police officers testified they lifted from a stolen VCR. (R&R 9.) All experts agreed that the latent print matched Petitioner's. (*Id.*) But Petitioner argued that the print was not in fact lifted from the VCR. (*Id.*) The jury was entitled to credit the officers' testimony as to the source of the latent print. At the very least, it was not an "unreasonable application of clearly established[] federal law" for the New York courts to so find. *See* 28 U.S.C. § 2254(d)(1).

15

Second, Petitioner complains that, while the trial court qualified a prosecution witness, Lt. Rossetti, as an expert in identifying forged fingerprints, it did not similarly qualify a defense witness, Mr. Holik. A habeas court reviewing the exclusion of testimony must "determine whether the excluded testimony was material to the presentation of the defense so as to deprive the defendant of fundamental fairness," "whether the exclusion was an error of constitutional dimension, and whether the constitutional error was harmless beyond a reasonable doubt." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988); *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." (emphasis in original)).

Petitioner has not met this heavy burden. His expert was not prevented from testifying. Instead, Petitioner's only complaint is that the trial court failed to qualify him as an expert in forged finger prints. At trial, Petitioner moved to qualify Mr. Holik as "an expert in the area of fingerprint comparison, analysis, and lifting." (R&R 11-12.) The prosecution did not object. (*Id.*) When the prosecution, in rebuttal, sought to qualify Lt. Rossetti as an expert in forged fingerprints, defense counsel objected because Holik had not been so recognized. (R&R 10.) But, there was no basis for this objection because the defense had not sought to qualify Holik as such. (R&R 11.) And even when Petitioner later called Holik on surrebuttal, he did not attempt to qualify him as an expert in forged prints. (R&R 12.) At any rate, Mr. Holik was permitted to testify about his experience and his views regarding the possibility that the latent print was forged. (R&R 11-12.) Because Petitioner's expert was neither prohibited from testifying nor

16

denied a requested qualification, Magistrate Judge Fox is correct that the trial judge's conduct was not "fundamentally unfair." (R&R 12.)

Third, Petitioner asserts that the prosecutor improperly vouched for the credibility of the officers in summation. The Second Circuit has "repeatedly warned prosecutors not to vouch for their witnesses' truthfulness." *United States v. Modica*, 663 F.2d 1173, 1179 (2d Cir. 1981); *see also United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) ("It is well established that prosecutors may not vouch for their witnesses' truthfulness." (internal quotation marks omitted)). In short, a prosecutor may not express his or her "personal belief or opinion as to the truth or falsity of any testimony." *Modica*, 663 F.2d at 1178 (internal quotation marks omitted). However, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985). "In order to grant relief," a court must find that "the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998).[5]

This Court makes no such finding. In summation, the defense counsel suggested that the police officers committed perjury when they testified that they lifted the latent print from the VCR. (R&R 13.) In response, the prosecutor said, "I submit to you that" the officers "were straightforward and frank" and had "no motive" to lie. (R&R 13.) He continued:

> I submit to you that Vincent Rossetti . . . is a different type of expert than the others and you should be careful . . . before you mix him with the others. He's the head of the New York State Police Forensic Unit. His job depends on verifying when fingerprints have been tampered with and he testifies in court . . . he is

---

[5] Actually, because this is a habeas review of a state court conviction, this Court would have to find that it was "unreasonable" for the New York courts not to find the prosecutor's comments so egregious as to violate Petitioner's due process rights. *See* 28 U.S.C. § 2254(d)(1).

somebody who has been qualified in many cases to do this kind of examination. So when I asked Mr. Rossetti to come down here in response to the claim that [the fingerprint] was manufactured, I submit to you that he's not merely comparing prints, he's looking to see if there is any irregularity. And do you think that if there was any problem under the microscope . . . that he would somehow stand up for these officers?

(R&R 13-14.) These comments do not rise to the level of objectionable vouching. "[W]hen the defense counsel . . . attack[s] . . . the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (internal quotation marks omitted). Rebuttal language is "not improper" where it "relie[s] on evidence in the case to corroborate" the witness' testimony, or "ask[s] the jurors to draw inferences based on their common sense that would lead to the conclusion that [the government's witness] had no motive to lie." *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996).

This is precisely what the prosecutor did by focusing on Lt. Rossetti's qualifications, experience, and lack of motivation to lie. And although "[t]he well-advised prosecutor will sidestep all uses of the pronoun 'I'," "the phrase 'I submit'" is permissible, because it "expresses not a personal belief but a contention, an argument, which, after all, is what a summation to a jury is meant to be." *Id.*; *see also United States v. Rivera*, 22 F.3d 430, 438 (2d. Cir. 1994) (finding the prosecutor's use of the phrase "I submit to you that" acceptable in light of defense counsel's accusations that a government witness fabricated his testimony).

None of this justifies the prosecutor's statement that "when I asked Mr. Rossetti to come down here in response to the claim that [the fingerprint] was manufactured, I submit to you that he's not merely comparing prints, he's looking to see if there is any irregularity." (R&R 14.) One could argue that by mentioning that he "asked" Lt. Rossetti to testify, the prosecutor implied that

18

he hand picked Rossetti, because he holds him in such high regard or believes him to be truthful. This statement, however, is too ambiguous to rise to the level of "egregious[ness]" required by the Second Circuit. *Tankleff*, 135 F.3d at 252. Indeed, when the summation is viewed as a whole, it was not unreasonable for the state court to reject Petitioner's vouching claim. *See Eltayib*, 88 F.3d at 173 (noting that certain phrases where prosecutor uses pronoun "I" do "not automatically wreck the case," unless "summation viewed as a whole . . . reflect[s] improper vouching" (internal quotation marks omitted) (alteration in original)).

### 4. Supplemental Petition for Writ of Habeas Corpus

Petitioner's supplemental petition was intended to inform the Court of his efforts to obtain additional evidence to support Ground Four of his initial petition. (R&R 15.) Because Ground Four of the initial Petition has been procedurally defaulted, *see supra* subsection II(B)(3)(b), the Court denies the supplemental petition.

### 5. Petitioner's Section 440.10 Motion to Vacate the Judgment

#### a. Points Five, Six, Nine, and Ten

The state court found that Points Five, Six, Nine, and Ten of Petitioner's section 440.10 motion had been procedurally defaulted. (*See* Resp't Ex. 42.) "[A]n adequate and independent finding of procedural default" by "the last state court rendering a judgment in the case," "will bar federal habeas review of the federal claim." *Harris v. Reed*, 489 U.S. 255, 262 (1989). Accordingly, Petitioner's habeas claims on these same points must be dismissed.

Petitioner again asserts that his procedural default is excused, because his counsel was ineffective in allowing it to occur. (Obj. ¶¶ 4-8.) But again, despite conclusory allegations that his appellate counsel acted unreasonably (*id.* ¶¶ 6-7), Petitioner has not shown that the arguments omitted from his direct appeal were "significant and obvious" and likely to succeed, nor that

19

those included were "clearly and significantly weaker." *Stinson*, 214 F.3d at 322 (internal quotation marks omitted).

Indeed, Petitioner's claims here lack any merit. Points Five and Nine both allege that trial counsel was ineffective, because he failed to move to suppress the fingerprint evidence. (*See* Resp't Ex. 42 at 4.) But the record shows that trial counsel did seek suppression of this evidence. (*Id.* at 13.) Point Six alleges that the trial court improperly amended the Indictment. (*Id.* at 4.) But the amendment simply corrected the typographical error of listing a statute as section145.25 rather than section140.25 (*Id.* at 8), and no constitutional foul resulted therefrom, *see LanFranco v. Murray,* 313 F.3d 112, 119 (2d Cir. 2002) (explaining that there was no constitutional violation where an amendment to the indictment corrected an obvious typographical error in the date). Point Ten claims that the trial court erred in sentencing Petitioner as a "persistent violent felony offender." (Resp't Ex. 42 at 4.) This claim is meritless, however, since that determination merely involved a straightforward mathematical calculation. (Resp't Ex. 16, *People v. Wright*, Ind. No. 103/1997 (Dutchess Cnty. Ct. Sept. 24, 1998).) Because Points Five, Six, Nine, and Ten lack any merit, appellate counsel's failure to raise them was reasonable and did not prejudice Petitioner. Therefore, appellate counsel was effective, and Petitioner has not shown good cause for his procedural defaults.

### b. Points One, Three, and Eight

Points One, Three, and Eight all stem from Petitioner's erroneous belief that two separate indictments were brought against him. But the state court found Petitioner's belief unsubstantiated and dismissed these claims. (Resp't Ex. 42 at 6.) Because there is nothing unreasonable about this factual finding, this Court dismisses them.

### c. Point Two

Point Two alleges ineffective assistance of trial counsel. To establish this claim, Petitioner must show that his attorney fell below an "objective standard of reasonableness," and thereby prejudiced Petitioner. *See Strickland,* 466 U.S. at 688. Petitioner alleges that his counsel committed several errors. First, Petitioner asserts that his attorney should not have called Detective Hendryk because Hendryk helped establish that a crime was committed. (Resp't Ex. 39 at 13.) But Detective Hendryk also testified that Mr. Suchy, a neighbor who saw the perpetrator, was twice unable to pick Petitioner out of a line-up. (R&R 20.) Moreover, the fact that a crime was committed had already been established by the prosecution. (R&R 4.) Accordingly, counsel's decision to call Detective Hendryk was a "strategic choice" that was "well within the range of professionally reasonable judgments." *Strickland,* 466 U.S. at 699. Second, Petitioner contends that counsel failed "to investigate . . . who was [Petitioner's] complainant/accuser, thus denying Petitioner "the opportunity to confront his accuser." (Resp't Ex. 39 at 1.) Petitioner does not allege that counsel failed to cross-examine the prosecution's witnesses, or failed to object to hearsay evidence. Instead, Petitioner apparently believes that there is a legal requirement that in order to prosecute a crime the state must have a "complainant," who must meet specific legal criteria among which are having either called the police or walked into the police station. (*Id.* at 14 ("Mr. Suchy couldn't have legally been the defendant's complainant! Simply because Mr. Suchy did not call the police or nor [sic] did Mr. Suchy walk in the police station to make a complaint against the defendant.").) Petitioner's attorney was hardly ineffective for failing to embrace Petitioner's view of the law. Third, Petitioner faults his counsel for failing to pursue the fanciful problems with the Indictment and the trial court's jurisdiction which formed the basis for Ground Four of the Petition. (*Id.* at 1 (attorney failed to investigate "when the action

21

commenced"); *id.* at 4 (attorney never supplied defendant with the Indictment); *id.* at 15 (attorney did not determine whether the court had jurisdiction, nor demand that the state file a criminal complaint).) The Court has already noted that these claims are baseless. *See supra* subsection II(B)(3)(b). Accordingly, Petitioner's attorney was not ineffective for failing to pursue them.

### d. Point Seven

Point Seven alleges that the prosecution acted unethically by charging Petitioner with possession of a controlled substance without intending to prosecute the charge. Because this claim does not raise an issue of federal law, it must be dismissed. *See* 28 U.S.C. § 2254(a).

### III. Conclusion

Having reviewed de novo Magistrate Judge Fox's R&R and the record on which it was based, the R&R is adopted in its entirety, and the Petition is dismissed.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-13 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:    September 28, 2012
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22

Service List (By Mail):

Mr. Bruce Wright (98-A-6125)
Greenhaven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

Bridget R. Steller, Esq.
Assistant District Attorney
236 Main Street
Poughkeepsie, New York 12601